Case number 211329, United States of America v. Anthony Ozomaro, argument 15 minutes per side. Mr. Jagger, you may proceed for the appellate. You may remove your, yes, everyone at the podium may remove their masks. Thank you. My name is Stephen R. Jagger and I represent Anthony Ozomaro. I would reserve two minutes for rebuttal. May it please the court, Ms. Cain. This case is about the District Court's removal of a deliberating juror based on statements made by other jurors. The District Court is confronted with this issue after two days of deliberations. A close review of the record reveals that the District Court's individual examination of the jury panel was not thorough or complete. The result was removal and replacement of a juror without a firm factual foundation or other legally relevant reason. Counsel, you say that the judge's examination or questioning of that was insufficient or incomplete. What more should the judge have done by way of probing or questioning than what the judge does? Because the judge admittedly shouldn't ask where the juror stood on that perception of the case. So what else should the judge have done? The judge should have carefully considered how the questions to the jurors were phrased, number one. Secondly, the judge should have picked up on the language that was used between the different jurors and should have also considered the timing in which these complaints were made. What recommends that? Because the standard is what? The standard is an abuse of discretion. Well, I don't mean our standard of review. The standard the District Court should use is good cause, right? Yes. And so when you're using good cause, what requires – I haven't found a case that says the District Court has to ask specific questions or ask questions that distill things out. Here you had a juror who was drinking who was, according to the other jurors, basically not deliberating. And why isn't that enough? First of all, the District Court discounted the drinking. No, I recognize that. But I think we would all agree that a juror who's drinking, that's pretty problematic, right? Perhaps it depends on, I guess, how much they drink. The drinking allegedly occurred on the first day of the – Really? So wait. Now district judges are going to have to inquire, because if you're 90 pounds and 5'8", alcohol is going to affect you differently than if you're 6'5 and 250. Does the district judge have to review metrics and make that determination? I agree with you. The district judge here discounted it. The district judge does not. The district judge has to exercise discretion about when it occurred, how much it was, who saw it, what was the report. That's the factual inquiry. But you agree it was uncontested on both things? It was uncontested on the drinking, yes. I think that Mr. Azamora, who represented himself in this case, objected to, first of all, the individual inquiry, the jurors at all, and he did make arguments that the statements that were made did not constitute bias. He said they all went to credibility. Now whether or not the judge distinguished between bias and credibility is unknown on the face of this record, because they use the words interchangeably. The jurors all talk about one says bias, one says credibility. Another one says anything he said went to credibility issues. The only juror that really – Didn't the court, in its capacity to look for just cause, wasn't it able to say that the answers of these jurors, even if they referenced credibility, were explained by the follow-up? Credibility, they didn't believe any of the evidence. Weren't there explanatory statements with a number of those that could lead a judge to say, I understand credibility this way. You're speaking about credibility as to all of the evidence. Or the judge concluded, I think in this case, when the judge made the conclusory remarks about the removed juror 109, the juror said more than half of the jury reported bias. And if you look at what the jurors say, that's not correct. That's absolutely not correct. That was the judge's conclusion from the inquiry. It was, but the position is the inquiry is incomplete, it's not thorough. And quite honestly, there's a couple of times when the juror reported bias, she says, well, do you mean bias against the police officers? That's not a neutral question. That's not. Do you think making this determination requires a judge to count heads? I do not. I can't imagine that it would. It does not. If three people from the jury said, this person is saying this, this person is not listening to the evidence, why wouldn't that be adequate for a judge to exercise her knowledge of how a trial functions and the impropriety of a juror acting that way? Because the juror, only one juror, really, 114. I'm sorry, say that again. Juror 114 is the one that makes the multiple accusations about statements made, that he hated the government, all those things. That's the only juror that says that. I thought there were five out of 12. Reading the record looks to me like there are five out of 12 who express serious concerns about what this juror was doing regarding the merits of the case. Let me review the jurors, if I could. Could you keep your voice up, please? I am. I'm sorry. I have a little bit of a... Okay, that's okay. I'll make an extra effort to listen. I think this relates to Judge Strange's question. Assuming hypothetically the jurors really wanted to get rid of this juror, 109, because 109 did not agree with, and we don't know how the case was split, but they did not agree with the verdict of the majority. Let's say that was the reason. And you want to get to resolution. You want to get to a verdict. Without probing into the ultimate function of the jury, how would the judge ever get to that? And if there's no way for the judge to get to that, then how can we say that what the judge did is unreasonable? That's two questions. It is. I think I could answer that, though, by going through what happened with the questions that were asked to the jury. First of all, going through the answers to the questions, and I read the record a little bit different than Judge Strange, I think, perhaps. I'm going to use the numbers. I know we have different numbers in our briefs, but I'm going to use the numbers I used in my brief. Jurors 26, 29, 46, 47, and 49. That's five jurors. Answer, they did not see or hear any instances of jury misconduct during deliberations or otherwise. So there were no statements made by any of them. They saw anything or heard anything. Now, if they followed the jury instructions properly, and I know how deliberations work. I did it for a long time. But if they followed the instructions properly, you're not supposed to discuss the case unless all the jurors are sitting there listening. That's what a deliberation is. And how were all these bad statements made and all this behavior exhibited if five of them never saw it or didn't see it? That's question number one. Question number two, Juror 19. It says he hears an offhand comment outside of deliberations relating to mistrust of people involved in the search. That comment is not directed at any specific witness. The third juror does not explain what the comment was. The judge does not ask him what the comment was. The judge also does not ask why that juror has concluded that it was a comment made not based on the evidence. I thought the testimony of Juror 19 was, for me it felt like if this person had that distrust, that was the point of the interview process when we first came in. And it's like, why, if they have had that distrust that's not based on the evidence, why are they here? Now, how much clearer could you be in layman's terms than you think somebody's acting inappropriately? I think the court should have asked, what is the comment that leads you to believe it's not based on the evidence? Because you have to take that comment in the context of what the other jurors say. Well, he told them that they did not trust a couple of the people involved in the search. Correct. Does that trust go to credibility? Does that trust go to bias? Is that an untrust in the testimony that was given? The ability to recount? We don't know what it is because the court doesn't ask. I think that's where the court... Go ahead, Judge. Okay, so you admit that the standard is abuse of discretion. I do. How would you distinguish U.S. v. Patterson, in which the court there upheld the removal and replacement of a deliberating juror for lack of candor during the voir dire? And in the voir dire, I think juror number 109 said they didn't have any bias or against anybody. It could be fair and impartial. So how do you distinguish Patterson from the facts here? I'm not sure. Is Patterson the one where the juror actually answered questions during voir dire? Yes. And I don't think in this question... I don't think the judge can assume prejudice by silence. But if the court asks a question where you have a duty to respond and you sit there without saying anything, aren't you in fact responding to that and by your silence saying, I don't have any issues? Correct. And maybe this juror didn't have any issues. Maybe this juror was all about credibility. We don't know because the record is insufficient to make that determination, and that's where the case goes off the rails. I think. That's my position. I did this for 25 years as a circuit trial judge in Kentucky. I've had this issue many times. And you've got to ask questions without prying into what the deliberations are, what the count is. But you're asking that this court micromanage the district court, and the standard is good cause. And here five jurors are complaining at different points about this one juror and indicating that this juror wasn't viewing the evidence objectively. And that's a commitment they make at the outset. That's to me, if the district judge finds that those jurors are credible, who as you know from being a judge, look you in the eye, tell you what's going on, and you hear this stuff, doesn't a district judge at that point have an obligation to excuse the person? Especially when, right, there's alternates that were picked at the beginning that everyone agreed to. There's no problem here with the alternate. And so they can simply fill it and do what the district judge did here and instruct them to start again. And that seems to handle everything. I think that in context it doesn't handle everything because they never make direct statements. These other jurors say, yeah, this guy's bad, this guy's doing this, this guy's doing that. What does he say? Some of them that say he's inappropriate directly in response to the judge's talking about credibility. There's at least two of them that say that, and one of them says it twice. One says it's... Let me ask you this. If a juror says, I don't trust the defendant's witnesses, they're all lying. Should a district judge excuse them? One juror comes and says this other juror, or two jurors come and say, this other juror said I don't trust the defendant's witnesses. They're all lying. Should the judge excuse that juror? No, because it's based on the statements that were made. I'm sorry? No, the judge should not excuse them because it's based on the testimony that we have. Now, what if they say the defendant's guilty, I'm not going to believe anything he presented? Well, I think that's a completely different story than what happened here, but of course that juror's going to get tossed. Well, why is that different than what happened here? I hate the government. I'm not listening to what their witnesses have to say. Only one juror says that. And the district judge was there and the district judge observed the jurors throughout and found the jurors credible. Eleven of whom did not say that. But four others of whom said similar things. Based on what they were told by other jurors, not based on what they were told. That's where the case is hard because there's a duty to investigate this on the part of the court. The court can't just go through the procedure and say, I asked the questions, I did what I could, I made the determination. You've got to make the determination based on the facts that you elicit from the testimony. You're asking that we micromanage it and tell district judges exactly what questions to ask, and they're there, they know the environment. Here, he inquired of numerous jurors and got similar statements from them. Actually, more than five gave similar statements, but my memory is that five gave particular statements, such as the credibility one. It's mainly the credibility of different witnesses that have been questioned. Specifically, all of the law enforcement officers. I think that goes back to Judge Thapar's question. I guess in core, our concern about the right of the district judge to do this. I see your time's up. Why don't you make a conclusion for us? Actually, I had a question. Oh, please, go ahead. I wanted to ask you, Counselor, about the enhancement, just a little bit about. Here, the failure to enhancement was based on the original trial setting where the defendant said, I'm not coming out, I'm not going to be in trial, I don't care what you say, basically. Would a failure to appear enhancement ever be applicable when a defendant is in custody? That's the issue in this case. He's in custody the whole time. Judges say what they mean, but HIPTA mean what they say. The judge tells him, I guess it's the last pretrial conference or status, whatever it was, he says, I'm not going to be here, and I've told you constantly that I contest your jurisdiction. I'm not going to appear in court. He's in custody when he says this. He remains in custody the whole time. Judge says, you will be here. I'll bring you here by force if necessary. But that was the original judge. The judge trying the case was a different judge. But when we apply the enhancement, he goes back to that very thing. When the second judge applies the enhancement, they go back to his failure to appear. The marshal certainly could have brought him out of the cell. The judge would put an order on, the second judge would put an order on bringing him out by force if necessary. He appears on that second trial, and he participates all through the process. They're not obligated, right, to bring him out by force? That seems a little extravagant. They're not obligated, but they put an order on they would do that in the second case. No, I understand that. The first time, shouldn't you give them the benefit of the doubt and try to have them come on their own volition? Are we going to have law enforcement using force right away? No, but the judge said they would before that ever occurred. The judge said, I will force you here if necessary. You will be here. She says it twice. Your point is that that was an option if they wanted to do it, so the judge didn't do that, but we shouldn't apply this enhancement just because he said. He's in custody. Okay. So back to my other question. Would it ever apply to anybody who's in custody? I think it depends on the facts and circumstances of that. This guy had told him from the beginning he wasn't going to come that day. They had plenty of time to make the, you have to do this a lot with prisoners. They had plenty of time to make arrangements to get him brought to the courtroom that day, and they didn't do it. I don't know that you have to do it a lot. I tried cases for 10 years. I never had a defendant not show up. Even those in custody, they came out when they were told and they showed up for court. It seems ridiculous that we would have to order judges to use force to get them there. Well, I don't think you have to order them to use force. The judge made the decision to use force. The second time. To at least put the order on the second time, but that sentencing judge held that first time. They don't have to do it the first time. They don't have to, no. Okay. But I don't think it's a willful act when he doesn't come out when he's told he's going to be brought out either. Okay. It's required by the thing. You'll have your rebuttal time. Okay. Thank you. Thank you. May it please the court, defense counsel. My name is Erin Lane and I represent the United States. I also actually represented the United States in the trial of this matter and throughout the course of the proceedings. Your honors, the district court in this case did not abuse its discretion when it decided to remove juror 109 and replace that juror with an alternate. When the court determined that juror 109 had a generally held categorical bias against the government and also failed to disclose that bias under oath on two occasions. During voir dire and subsequent questioning by the district court during the evidentiary hearing held during deliberations. So there were questions to 109 about whether they had any distrust or any other animosity or whatever toward the government? During voir dire, your honor? Yes. Yes. In the record on page, well, ECF 167, page 772. I think first it's important to note that juror 109 was one of the first 14 jurors who was originally seated in the box. When the 14 jurors were seated in the box, the district court judge, Judge Jarboe, she conducted all of the voir dire in this case. She posed a question to the 14 jurors, which was, is there any reason that you can think that would prevent you from being fair and impartial to either side in this case, government or defense? Juror 109 did not respond. Judge Jarboe then asked, does anyone have any sort of negative opinion about police in general or the criminal justice system as a whole? Juror 109 did not respond. I'll first turn to the jury issue and address the sentencing enhancement, which the government also contends was not an error to apply in this case. So looking at the replacement, the juror 109 alternative replacement issue. The federal rules of criminal procedure and this court allow for district court judges to replace a seated juror with an alternate when the district court determines that a seated juror is unable or disqualified from performing their jury duties. That's federal rule of criminal procedure 24 and a variety of cases out of this court, including United States versus Diolio. This court has also long recognized and entrusted that decision to replace jurors with alternates to the district court. And that is because district court trial trial judges are in the best position to view a juror's demeanor and determine whether he or she is able to shoulder the obligations of jury service. Isn't the hard part here discerning whether the responding juror is reacting to the sufficiency of the government's evidence as opposed to an inherent bias? Importantly, Your Honor, here the district court judge was very careful in what questions she posed to the jurors and very deliberate in the style of questions she asked. She did not ask any questions about sufficiency of the evidence or status of deliberations. And I think that gets to part of the critique of the defense in this case about the leading questions from the district court judge. Those leading questions were deliberate in order to not get into the sanctity of deliberations. She focused her inquiry into the reports of... But if you have one holdout juror, to go back to Judge Strange's question, who's holding out and believes the government hasn't proven their case, essentially the other jurors could team up and get that juror removed if the judge doesn't try and figure out what's going on. Isn't that a problem? That's a possibility, but that's not what happened in this case. The reports that came to the district court judge on the second day of deliberations were from two separate jurors who reported that a juror was drinking and had a bias against the government. The district court determined that she needed to get to the bottom of those two reports and decided to individually question each of the jurors under oath in the presence of defense and the government. But that came after two reports from the deliberating jury that we are unable to reach a verdict. We are unable to reach a unanimous verdict. Then we got these two incidents. And didn't the first instance of alleged drinking occur before this report about... Didn't it occur during the time they were saying we can't reach a verdict? And before they started complaining about 109 and what happened? It was later determined that I think there was only one instance of one juror drinking one beer at lunch early on in the case, which is part of the reason why the district court ended up discounting the reports of drinking while in jury service and instead focused in on what was determined to be a firmly held general bias against a category of witnesses, law enforcement, and the government. So the reports that came to the district court, importantly under oath, by the jurors who were individually questioned were, number one, consistent in five jurors, if the judge is correct, five jurors were able to identify juror 109 as an individual who had some form of categorical bias. They identified juror 109 not by juror number but by seat number, actual name, and then by physical appearance. And I was referring to 109 because that's not the way they identified that individual. But going back again to this whole notion, the jury is told in the instructions that it's their job to make credibility determinations. So how do we distinguish or how should we look at these things that we're now calling categorical bias and just the province of credibility determinations that each juror is told that they need to make? I don't think they're told that these are the things that you consider in determining credibility. So they have this discussion. How do we distinguish that? That is, I think, at the heart of the issue here. Whether it was an abuse of discretion on the part of the district court to determine that there was a general held bias and indeed juror 109 was simply making a credibility determination about law enforcement. And the evidence that we have to show that the district court did not abuse her discretion in ultimately deciding juror 109 held a general bias and not making a credibility determination were and are the statements provided by juror 109's fellow jurors. So juror 114 told the court under oath, juror 109 said, you cannot trust the police. They will make everyone look guilty. Any evidence provided by the police should not be trusted. And that's at page 1652. That is not a credibility determination. That's a categorical decision about a category of witnesses, law enforcement. Juror 114 also testified under oath that juror 109 said, I hate the government. That's at page ID 1653. Judge Strach already pointed out that juror 19 under oath talked about a distrust that's not based on the evidence on the part of juror 109. And that is a lay person's testimony to the district court about what they are seeing as an inappropriate bias, not an appropriate credibility determination about a category of government witnesses. And then finally, juror 83 testified under oath that I have witnessed them, juror 109, not being impartial to the government. That's at page ID 1656. So what we have here are decisions or opinions that were held by juror 109 before he entered into deliberations, which were purposely not disclosed during voir dire, and had juror 109 responded to the questions posed by the district court in voir dire, the government would have exercised a peremptory strike. He was one of the first 14 people in the box. We had not exercised any strikes at that point. Had he disclosed that he hated the government, distrusted the police, would never trust any evidence from the police, the government would have exercised a peremptory strike. And he prevented the government from being able to do so by not being truthful in the voir dire process. That is also, I think, an important point in this case, because the district court judge ultimately determined that there were two salient issues that gave her good cause to remove juror 109 and replace him with an alternate. Of course, the information that was provided by his fellow jurors about these sorts of statements regarding a general bias, those alone are sufficient to remove that juror from the jury and replace him with an alternate. But also, the district court highlighted that juror 109 was not truthful to the district court on two occasions under oath. During voir dire and then during the subsequent inquiry, the evidentiary hearing held by the district court in which he individually questioned each juror about their biases during the deliberation process. Your opposing counsel speaks a good bit about failure to follow up. Is part of the problem here a failure to follow up on someone not giving an answer? Is there some sort of responsibility of the judge to say, I want to hear a yes from all of you or I want to hear a no from all of you? And the failure to say, I did not see you respond to that juror X. Does that have some role in a failure to really investigate on the part of the court? Respectfully, no, Your Honor. In my admittedly limited experience in comparison to co-counsel in trial practice, it is rather routine to have opening questions to a jury panel. Please raise your hand if you have any strongly held opinions about law enforcement one way or another. Please raise your hand if you have a strong opinion. Remind me of her question. I don't remember whether she said at the beginning of her question, please raise your hand if. She didn't ask the jury to raise a hand. Does anybody have any problems? Correct. Correct. So it was an opening question to the jury panel looking for a response from the jury if they felt that that question had something to do with their individual opinions. During that board hour, was there an opportunity for the government and defense to follow up with direct questions to the venari? We had a very limited ability to follow up with questions. To the judge or directly to the panel? To the judge to then ask the panel. Because there was this unique element of a pro se counsel, the district court determined that she would control the voir dire process. I think you had another issue to address. Yes. So unless there are any further questions on the juror issue, I will turn now to the second issue on appeal, which relates to the sentencing enhancement. Here the district court did not err in applying the two-point enhancement for obstruction of justice. The sentencing guidelines, 3C1.1, provide a two-point enhancement for obstruction of justice, and the application note 4E gives a non-exhausted list of examples of the type of conduct that would trigger this two-point enhancement. And in that list, there is the, quote, willful failure to appear as ordered for a judicial proceeding. In this case, there was no ambiguity that the defendant, Mr. Asamaro, was required to be physically present for his first initially scheduled trial in June 2020. Uniquely, Mr. Asamaro had two reasons why he needed to be physically present. First of all, he was the criminal defendant in that case. Also, he was representing himself. So in his capacity as a defendant, he was required to be physically present for the commencement of trial, and in his capacity as counsel, he was required to be physically present for trial. On June 16, 2020, the government, standby counsel, district court, a panel of jurors were all in the court ready to commence the criminal case. Mr. Asamaro, who was in pretrial detention, willfully refused to leave his jail cell. And I disagree with the defense opinion that mandating hands-on removal of individuals in custody to bring them to court is, first of all, what the sentencing guidelines means by willful failure to appear, and also would set a dangerous precedent for law enforcement who might be required to go hands-on every time an in-custody defendant decided that they did not want to appear for a proceeding as required. Does every instance of a defendant refusing to leave the cell and come to court for a proceeding, does every instance of that warrant the application of the enhancement for obstruction of justice? I see I'm out of time. Can I answer your question, Your Honor? So, potentially. I think it depends on the type of proceeding. Here the guideline specifically says a willful obstruction or impediment of the administration of justice with respect to the investigation, prosecution, or sentencing of the incident offense. And so if the defendant is required to be physically present for a proceeding to occur, which is the case in a criminal trial, and therefore successfully adjourns that proceeding requiring the court to waste time and resources, in that type of case, I do think the two-point enhancement should and does apply. If a defendant refuses to appear for a status conference, which maybe can be held without their physical presence and just with their defense attorney, for example. I'm talking about the trial. I think every time a criminal defendant willfully fails to appear for a trial requiring the trial to be adjourned and a panel of jurors to be excused, wasting court time and resources, the consequence is what the guideline provides, a two-point enhancement. Yes. Thank you. Unless there are other questions? No, thank you. Thank you very much. We respectfully request that the court affirm the judgment of the district court. Thank you. And by the way, I want to make one thing perfectly clear. I'm not asking this court to micromanage what the district court did. That's not the point of the whole inquiry. The point of the inquiry is this court must ensure the district courts make a thorough and complete investigation upon which there can be a factual reason to take a deliberating jury away from a panel that's been duly sworn and heard the evidence in the case. The alternate was sworn and heard the evidence in the case. Correct. But this jury, the first one, hit eight hours of deliberations and couldn't reach a verdict. But they have to start over. And the district judge instructed them to start over. Correct. I don't think they did. I think it's pretty clear. I am speculating. Nor can the judge remove a deliberating jury on speculation and assumption. That's what happened in this case. But that's the question, right? The question isn't do we have to do this, do they have to ask this question. It's is there a sufficient factual record from which we can conclude the district judge did not, and this is the important part, abuse their discretion. Correct. And she's given wide latitude when we talk about discretion. It is the word discretion. It's not de novo review. It's discretion. But it's not boundless. No, I agree it's not boundless. There are boundaries. And the Sixth Amendment pretty much sets those boundaries in the interest of justice to be very careful when you make this inquiry. But when you have multiple, I'm sorry to interrupt you, but when you have multiple jurors saying this, it seems to me hard for a district judge who's trying to tread a very careful line of not getting, because if she accidentally treads into the substance of the deliberations, you're up here screaming about that. Rightfully so. She would have probably declared a mistrial at that point. Maybe. And that's an option they had here, too, because you've got five jurors who were told to be there present in deliberations. They don't hear anything. But why declare a mistrial when you've had a trial and you've got an alternate? I mean, you do have an alternate sitting and available. You do. I agree with that. Can I make one more very, very quick comment here? I don't think that I'm asking that the court render any type of opinion to mandate forceful removal of a prisoner from the cell. That's not what we have here. The judge is the one who decided and told the defendant, I'm going to have you removed if you don't come down voluntarily. And when he didn't come down voluntarily for that first trial, the judge did not follow through with that. And I think it's very unfair to shift that burden to that defendant who can rely on what the district court said. Really dangerous, though. It is. It's dangerous both ways. No, but you're asking us to tell law enforcement to use force. I'm not asking that. I am not asking that. I'm asking if the court isn't going to... If they don't come voluntarily, how else do they get them out? Is your point that the judge should not make that statement? He should not make that representation. And then when the defendant relies on that representation... Defendant's relying on that they're going to use force? Maybe. This guy's wacky. He's never, ever communicated to me. I'm going to put it right on the record. I've never even talked to this fella. But he has a very unusual outlook. He's not the first one that's had this outlook. But he has a very unusual world view. So maybe he did. I don't know. Thank you. I see your time's up. Do you have one last statement? I don't think I do. I think it's pretty clear. We would say how much we appreciate what you all have done. Thank you. The government did a good job, and you did a good job. And a job that makes our criminal justice system work. People have to be willing to be CJA representatives. And because you are, we function much better. And we thank you. Thank you. All right.